## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**CHRISTOPHER SHORTER,**

      **Plaintiff,**

**v.**                              **Case No.**
                                        **4:19-cv-108-WS-CAS**

**WILLIAM BARR, in his capacity as**
**Attorney General of the United States,**
**et al,**

      **Defendant.**
_____/

## <u>DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT</u>

Plaintiff, a transgender female and former Federal Bureau of Prisons (BOP) inmate brings the instant action pursuant to the Rehabilitation Act and *Bivens*. *Doc. 43*. Plaintiff claims that the Rehabilitation Act was violated when she did not receive gender affirming surgery while housed in BOP. *Doc. 43*. Plaintiff also claims that BOP officials were deliberately indifferent to her serious medical needs in violation of the Eighth Amendment. *Doc. 43*.

### STATEMENT OF PLAINTIFF'S CLAIMS

On August 23, 2019, Plaintiff, a former BOP inmate filed her Second Amended Complaint alleging that while housed in a BOP facility in Southern Florida that the Rehabilitation Act was violated concerning denial of gender affirming

surgery and that her Eighth Amendment Constitutional Rights were also violated. *Doc 43*.   Plaintiff has been diagnosed with gender dysphoria.   *Doc. 43*.   Plaintiff sued William Barr in his official capacity in relation to her Rehabilitation Act claim. *Doc. 43*.   Plaintiff brings the alleged Eighth Amendment violation claim pursuant to *Bivens* against John Doe #1, John Doe #2, and Ian Connors alleging that they were deliberately indifferent to her serious medical needs in violation of the Eighth Amendment.   *Doc. 43.*

Ian Connors is the National Inmate Appeals Administrator.   The gravamen of Plaintiff's complaint against Connors is that Connors "participated upon information and belief" in the denial of Plaintiff's appeal of administrative remedy 908238-A1 and 933147-A1.   *Doc. 43.*   Plaintiff also claims based on "information and belief" that Connors participated in teleconferences involving the Transgender Clinical Care Team (TCCT).   *Doc 43.*

## MOTION TO DISMISS STANDARD

Although the Plaintiff need not submit detailed facts of every part of her complaint, she must provide more than statutory or constitutional labels and statements of legal conclusions in order to prove that he is entitled to relief.   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007).   To survive a Rule 12 (b)(6) motion to dismiss, the Plaintiff must state sufficient facts so that a claim for relief is plausible on its face.   *Id*. at 570.   While all factual allegations are taken as true, a

court is not required to take as true legal conclusions masked as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 677, (2009).   Where these factual allegations do no more than infer the mere possibility of misconduct the threshold of plausibility that would give rise to an entitlement for relief has not been met.   *Id.* at 679.   The pleading standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Id.* at 678.   A plaintiff must assert, "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.   *Twombly*, 550 U.S. at 555.

Assuming all of the factual allegations in the Plaintiff's Second Amended Complaint to be true, a Rehabilitation Act action is not available to remedy her complaints.   Likewise, a *Bivens* action is not available to remedy Plaintiff's complaints, even if it were, Connors alleged conduct did not rise to the level of a constitutional violation, much less a violation of clearly established law.   *See Iqbal*, 556 U.S. at 679 (2009).

## ARGUMENT

This court should dismiss Plaintiff's claims because (1) the Rehabilitation Act clearly excludes individuals in the Plaintiff's position; (2) the court lacks personal jurisdiction concerning Defendant Connors; (3) no *Bivens* remedy is available here because Plaintiff's claim presents a new context for which the Supreme Court has never extended an implied remedy under the Constitution, alternative processes

3

preclude a *Bivens* remedy, and other special factors counsel hesitation in extending *Bivens*; and (4) Defendant Connors is entitled to qualified immunity on all claims.

### 1.    Rehabilitation Act excludes individuals in Plaintiff's position.

Plaintiff has been diagnosed with gender dysphoria. *Doc. 43.* Plaintiff brings a Rehabilitation Act claim against Barr, claiming that BOP officials refused to reasonably accommodate Plaintiff and refused to provide Plaintiff with medically necessary care including surgery. *Doc. 43.* Plaintiff's Second Amended Complaint shows that Plaintiff received medical treatment so it appears that the crux of Plaintiff's complaint against Barr is that BOP did not perform gender affirming surgery on Plaintiff. *Doc. 43.*

Plaintiff claims that she has been qualified as an individual with a disability as defined by section 705(20) of the Rehabilitation Act. *Doc. 43.* The Rehabilitation Act states that "[n]o otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. section 794.

The general definition of "disability" for Rehabilitation Act purposes is "a physical or mental impairment that substantially limits one or more major life

4

activities of such individual[.]"   42 U.S.C. section 12102(1).   "Major life activities" include operation of a major bodily function.   42 U.S.C. section 12102(2)(B).   At first blush, gender dysphoria would appear to fall under the general definition of disability.   However, the question in this case, is whether Plaintiff is an "otherwise qualified individual with a disability" as defined in the Rehabilitation Act.   The Rehabilitation Act specifically exempts "gender identity disorders not resulting from physical impairments" from the definition of disability. 29 U.S.C. section 705(20)(F).   The term "gender identity disorder" was replaced by the term "gender dysphoria" in the Diagnostic and Statistical Manual of Mental Disorders ("DSM") in 2013, with the publication of the fifth edition ("DSM-5").

To be sure, there is disagreement as to whether gender dysphoria falls into the Rehabilitation Act's categorical exclusion among the few courts that have discussed the issue.   *See Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 753-54 (S.D. Ohio 2018) (gender dysphoria not resulting from physical impairment is within the ADA's exclusionary language); *Michaels v. Akal Sec., Inc.*, No. 09-CV-01300-ZLW-CBS, 2010 WL 2573988, at *6 (D. Colo. June 24, 2010) (gender dysphoria is a gender identity disorder and therefore excluded); *Blatt v. Cabela's Retail, Inc.*, No. 5:14-CV-04822, 2017 WL 2178123, at *3 (E.D. Pa. May 18, 2017) (gender dysphoria resulting in substantial limits on major life activities falls outside the ADA's exclusionary language);   *Doe v. Massachusetts Dep't of Correction*, No.

CV 17-12255-RGS, 2018 WL 2994403, at *6 (D. Mass. June 14, 2018) (drawing a distinction between gender identity disorder and gender dysmorphia and suggesting that there may be a physical etiology underlying gender dysmorphia sufficient to take it out of "not resulting from physical impairments" category); *John Doe v. Northrop Grumman Systems Corporation*, 2019 WL 5390953 (this court concludes that a condition of "gender dysphoria" (formerly described as a "gender identity disorder") that does not result from a physical impairment is expressly excluded from the definition of disabilities covered by the Americans with Disabilities Act). However, the undersigned has not found a federal court of appeal that has ruled on the issue to date.   Nonetheless, based on the plain reading of the Rehabilitation Act, gender dysphoria is excluded.

However, even assuming the Rehabilitation Act encompasses gender dysphoria claims, Plaintiff failed to file a timely administrative complaint with the DOJ.

### a.   Rehabilitation Act Administrative Remedy Process

The Department of Justice (DOJ) has specifically established an administrative process for the assertion and investigation of complaints regarding alleged violations of the Rehabilitation Act in correctional facilities that are in addition to the BOP administrative remedy process.   *See* 28 C.F.R. section 39.170. The DOJ, which includes the BOP, promulgated extensive compliance procedures

for any allegations of disability or accessibility discrimination under Section 504, which include complaint investigation, conciliation, and appeal, with a hearing before an administrative law judge.   28 C.F.R. section 39.170.   The complaints are processed by the Director of the Equal Employment Opportunity Office at the DOJ. 28 C.F.R. section 39.170(d)(4).   Before filing a complaint with the DOJ pursuant to section 39.170, a federal inmate must first exhaust the BOP administrative remedy process set forth in 28 C.F.R. section 542.10 *et seq*.   *See* 28 C.F.R. section 39.170(d)(1)(ii).

"Complaints shall be filed within 180 days of the alleged act of discrimination, except that complaints by inmates of Federal penal institutions shall be filed within 180 days of the final administrative decision of the BOP under 28 CFR part 542." 28 C.F.R. section 39.170(d)(3).

### b.   Exhaustion of DOJ's Procedures Is Required

The Supreme Court "has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 104, 144-45 (1992), superseded by statute as recognized by, *Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006).   In *Jones v. Bock*, 549 U.S. 199, 216 (2007), the Court ruled that "failure to exhaust is an affirmative defense under the PLRA [Prison Litigation Reform Act], and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."

However, in the instant case, Plaintiff pled that he exhausted his administrative remedies.

Exhaustion of a federal agency's administrative process is required prior to filing a civil action. *McGuiness v. U.S. Postal Serv.*, 744 F.2d 1318, 1322 (7th Cir. 1984) (dismissing Rehabilitation Act claim for failure to exhaust administrative remedies); 28 C.F.R. section 39.170(d)(1)(ii). Exhaustion of both the BOP and DOJ processes is required here. *See Cardenas-Uriarte v. United States*, No. 14-cv-747-JPG-PMF, 2015 WL 516316, at *4 (S.D. Ill. Sept. 1, 2015) (adopting Rep. & Rec.) ([p]laintiff's failure to exhaust the DOJ disability discrimination complaint process…demonstrate[s] that [the] Rehabilitation Act claim must be dismissed); *see also Cooke v. U.S. Bureau of Prisons*, 926 F. Supp. 2d 720, 734 (E.D.N.C. 2013) (dismissing plaintiff's Rehabilitation Act claim for failure to exhaust the DOJ's administrative process); *Crowder v. True*, No. 91 C 7427, 1993 WL 532455, at *5-6 (N.D. Ill. Dec. 21, 1993) (plaintiff must exhaust administrative remedies for Rehabilitation Act claim), *reconsideration granted in part on other grounds*, 845 F. Supp. 1250 (1994), *aff'd on appeal on other grounds*, 74 F.3d 812 (7th Cir. 1996); *Gambino v. Hershberger*, No. TDC-17-1701, 2019 WL 1300856, at *10 (D. Md. Mar. 20, 2019) (all circuits ruling on the issue have held that the exhaustion requirement of the PLRA applies to claims brought under the Rehabilitation Act). In summary, a plaintiff who fails to exhaust their DOJ administrative remedies must

8

suffer the consequences of dismissal if they want to pursue their claim under the Rehabilitation Act.

### 2. The court lacks personal jurisdiction concerning Defendant Connors.

A court considers two questions in resolving whether personal jurisdiction exists.   First, the court determines whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute.   *Melgarejo v. Pycsa Pan., S.A.,* 537 Fed. Appx. 852 (11th Cir. 2013).   Second, the court examines whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.*   The Due Process Clause requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice.   *Id.*   Courts have no power over one whose contacts with the jurisdiction are random, fortuitous, or attenuated.   *See Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King Corp.v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Plaintiff cannot carry his burden of "establishing a prima facie case of personal jurisdiction."   *Dugan v. Jarvis*, 725 F. App'x 813 (11th Cir. 2018). Connors works "in Washington, D.C." *Hopper v. Barr*, No. 5:18-cv-01147-MGL-

KDW, 2019 WL 3938076, at *21 (D.S.C. July 31, 2019).   Plaintiff accuses Connors of no conduct in Florida, let alone acts "purposely establish[ing] minimum contacts with "the state sufficient to justify "haul[ing] [him] into court" across the country. *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (internal quotation marks omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)); *Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("[T]he defendant's suit-related conduct must create a substantial connection with the forum State.").   At best, Plaintiff demonstrates that Connors played some role in making decisions whose effects were felt in the Southern District of Florida, which is not enough.   *See Walden*, 571 U.S. at 286 ("random, fortuitous, or attenuated contacts [a defendant] makes by interacting with other persons affiliated with the State" cannot establish jurisdiction) (internal quotation marks omitted).   Standing alone, this absence of "minimum contacts" defeats Count 2 involving Connors

In this case, at relevant times, Connors did not reside in the forum state and does not appear to have the necessary minimum contacts required to permit the court to exercise personal jurisdiction over him.   Connors did not create the necessary minimum contacts with the forum state when he signed Plaintiff's administrative remedy responses and or rejections.   The mere act of signing the administrative remedy forms or rejections, by itself, is a ministerial function that does not create a purposeful contact with the forum state.   At no point did doing so require Connors

to travel to the institution in South Florida or Florida for that matter.   Such random and fortuitous contact with the forum state, such as the mere processing of Plaintiff's administrative remedy, is not sufficient to exercise personal jurisdiction over Connors.   This is particularly true in a *Bivens* action where the essence of the claim is personal involvement with the Plaintiff.   See *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989) (liability in a *Bivens* action may be imposed upon a defendant only if he or she is personally responsible for the constitutional violation alleged in the Complaint).   In this case, Connors never resided in the forum state and had no personal involvement with the Plaintiff other than indirect mailings.   Moreover, that Connors is a government officer is not, in and of itself, sufficient to establish personal jurisdiction in Flordia's federal district court.   *See Stafford v. Briggs*, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1981).   For this *Bivens* action, personal jurisdiction over Connors is improper.   Accordingly, Connors should be dismissed from the instant case for lack of personal jurisdiction.

### 3.   This Court Should Decline to Imply a Novel Bivens Remedy.

Plaintiff has no automatic right to sue Connors for money damages. *Effex Capital, LLC v. Nat'l Futures Ass'n*, 933 F.3d 882, 891 (7th Cir. 2019) (*citing Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). The Supreme Court has recognized *Bivens* remedies only three times:   (1) a "Fourth Amendment unreasonable search[] and seizure[]" claim (*Bivens*, 403 U.S. 388); (2) a "Fifth Amendment gender

11

discrimination" claim (*Davis v. Passman*, 442 U.S. 228 (1979)); and (3) an "Eight Amendment deliberate indifference to medical needs" claim over an inmate's fatal asthma attack (*Carlson v. Green*, 446 U.S. 14 (1980)). *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1855-56 (2017).   In *Abbasi* the Supreme Court made it clear that expanding the *Bivens* remedy is now "a 'disfavored judicial activity.'"   *Id.* at 1857.   "The idea is that since *Bivens* is an implied remedy for damages under Constitutional principles rather than a legislatively-created remedy like 42 U.S.C. § 1983, courts should not expand that remedy unless there are special circumstances at hand." *Keller v. Walton*, No. 3:16-cv-00565-JPG-GCS, 2019 WL 1513498, at *1 (S.D. Ill. Apr. 8, 2019) (*citing Abbasi*, 137 S. Ct. at 1854–55).

### a.   The Special-Factors Framework

A case that "differs 'in a meaningful way'" from *Bivens*, *Davis*, and *Carlson* "presents a 'new [Bivens] context,'" *Keller v. Walton*, No. 16-0565-JPG-GCS, 2019 WL 2494169, at *2 (S.D. Ill. Jan. 28, 2019), report and recommendation adopted sub nom. *Keller*, 2019 WL 1513498 (*citing Abbasi*, 137 S. Ct. at 1859–60), and may not move forward unless the court first considers: (1) whether "alternative, existing process[es]" exist to address the allegedly unconstitutional conduct; and (2) whether any other "special factors counsel[] hesitation" in implying a damages remedy, *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (quoting *Bivens*, 403 U.S. at 396); *Abbasi,* 137 S. Ct. at 1857. This two-prong inquiry "concentrate[s] on whether the

12

Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed*." Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (quoting *Abbasi*, 137 S. Ct. at 1858). At bottom, "[t]he question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Abbasi,* 137 S. Ct. at 1857 (quoting *Bush v. Lucas*, 462 U.S. 367, 380 (1983)). "The answer most often will be Congress." *Abbasi*, 137 S. Ct. at 1857.

### b.   This Case Presents a New *Bivens* Context.

The Supreme Court has neither recognized a *Bivens* remedy for denying inmate grievances, nor addressed what specific accommodations the Constitution guarantees prisoners with gender dysphoria. *Carlson* alone has any similarities to this case, but not enough to avoid a special-factors inquiry. *See Abbasi*, 137 S. Ct. at 1865 (Even where "[t]he differences between [a] claim and the one in *Carlson* are perhaps small," "the new-context inquiry is easily satisfied."). *Carlson* arose out of a fatal, pre-PLRA medical emergency. So the inmate could not have turned to the administrative remedy process or a suit for equitable relief. *See Abbasi*, 137 S. Ct. at 1865. And Mr. Carlson died because those on the scene made obvious errors in responding to a physical condition with clear-cut treatment protocols. *See Carlson*, 446 U.S. at 16 n.1 (describing prison staff "fail[ing] to give him competent medical attention [for an asthma attack] for some eight hours," "administer[ing]

contraindicated drugs," and "attempt[ing] to use a respirator known to be inoperative").

Plaintiff, by contrast, does not claim that prison officials affirmatively worsened his condition in the face of an emergency, nor does Plaintiff claim that he did not receive treatment for his medical needs. *Doc. 43.* Here instead Plaintiff seeks to impose liability on Connors based on the administrative denial of an alternative course of treatment for a psychological condition with rapidly evolving protocols. *See Abbasi*, 137 S. Ct. at 1860 ("meaningful" differences include factors such as "the rank of the officers involved," "the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted," and "potential special factors that previous *Bivens* cases did not consider"); *Arar v. Ashcroft*, 585 F.3d 559, 580 (2d Cir. 2009) ("In the small number of contexts in which courts have implied a *Bivens* remedy, it has often been easy to identify both the line between constitutional and unconstitutional conduct, and the alternative course which officers should have pursued."). This makes a special-factors inquiry mandatory.

### c.   Special Factors Counsel Against a *Bivens* Remedy.

#### (i)   Alternatives Exist, Administrative Processes Are Available.

An inmate unhappy with her housing assignment or medical treatment can avail herself of a number of additional alternatives. Chief among these are the multi-

tiered administrative remedies created by the PLRA. *See Abbasi*, 137 S. Ct. at 1865; 18 U.S.C. § 3626(g)(2); *Goree v. Serio*, 735 F. App'x 894, 895 (7th Cir. 2018) ("Where Congress has established an alternative remedial structure to protect a constitutional right, the Supreme Court has strongly cautioned that the courts should not create a second remedy."). Plaintiff had the BOP administrative remedy process available to him and he sought relief through the BOP administrative remedy process. *Doc. 43*. This makes a *Bivens* remedy in- appropriate. *Id*. at 895; see, e.g., *Grady v. Kinder*, No. 18-cv-2159-JPG, 2019 WL 718534, at *2 (S.D. Ill. Feb. 20, 2019), appeal filed, No. 19-1442 (7th Cir. Mar. 12, 2019) (declining to recognize a *Bivens* due process claim where "Plaintiff has access to alternative remedies through the BOP's administrative remedies program").

### d.  Additional Special Factors Not Present in *Carlson*

#### (i)  Congressional Action Counseling Against a Remedy

Congress never enacted a federal counterpart to 42 U.S.C. § 1983. *Abbasi,* 137 S. Ct. at 1857. In the PLRA, it provided no "standalone damages remedy against federal jailers," giving rise to the inference that "Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Abbasi*, 137 S. Ct. at 1865. The Prison Rape Elimination Act also conferred no new right of action on inmates. See 34 U.S.C. §§ 30301–30309.

And in 2007 and 2009, Congress rejected the Prison Abuse Remedies Act, neither iteration of which would have gone so far as to create the sort of remedy Plaintiff seeks to pursue here. See *James, Reforming Prison Litigation Reform: Reclaiming Equal Access to Justice for Incarcerated Persons in America*, 12 Loy. J. Pub. Int. L. 465, 490 (2011).

> **(ii)   Suits Over Housing Designations Implicate Separation-of-Powers Concerns.**

Prison housing decisions have long "rest[ed] within the sound discretion of the Attorney General by virtue of the authority vested in him under 18 U.S.C. § 4001." *Marchesani v. McCune*, 531 F.2d 459, 461 (10th Cir. 1976); *accord King v. Cross*, No. 12-1280-CJP, 2014 WL 185015, *5-6 (S.D. Ill. Jan. 16, 2014).   This includes "provid[ing] suitable quarters" for all federal detainees. 18 U.S.C. § 4042(a)(2). Rather than dictate the minutiae of such decisions, Congress laid out five general, enumerated factors for consideration. 18 U.S.C. § 3621(b). In the PREA, Congress also deferred to the Attorney General's "independent judgment." *U.S. Dep't of Justice, PREA Regulatory Impact Analysis* p.15 (May 17, 2012). Similarly, Congress barred certain types of claims under the Administrative Procedure Act, in order to ensure "that [BOP] is able to make decisions concerning the appropriate facility . . . for a particular prisoner without constant second-guessing" on the part of the judiciary. S. Rep. No. 98-225, at 149 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3332; *see Brown v. Holder*, 770 F. Supp. 2d 363, 365 (D.D.C. 2011).   So

16

there can be no question of congressional "intent to allow the BOP to rely on its own judgment in . . . placing [prisoners] in institutions." *Cohen v. United States*, 151 F.3d 1338, 1343– (11th Cir. 1998). Putting "the judicial branch in charge of designating the place of confinement for a federal prisoner" would "collide[] with" Congress' preference to the contrary. *See Matter of Gee*, 815 F.2d 41, 42 (7th Cir. 1987). As a result, individual-capacity litigation over inmate housing designations poses exactly the "the risk of disruptive intrusion by the Judiciary into the functioning of other branches" described in *Abbasi*. 137 S. Ct. at 1860.

### (iii) Implying a Remedy Would Invite an Onslaught of Unworkable Litigation.

Recognizing Plaintiff's Eighth Amendment claim could bring a wide swath of prison actions "within the *Bivens* regime," *Wilkie*, 551 U.S. at 561, even those that concern "issues and discretionary decisions that are not the business of federal judges." *See Meachum v. Fano*, 427 U.S. 215, 228–29 (1976) (rejecting the argument that state inmate transfers fall "within reach of the procedural protections of the Due Process Clause"). And expanding the universe of potential *Bivens* defendants to include those who sign denials of grievances would guarantee that the ensuing litigation takes the broadest, most burdensome form. *See Abbasi*, 137 S. Ct. at 1858 ("It is not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation[.]").

17

It would also create significant line-drawing challenges. *See Wilkie*, 551 U.S. at 554 (describing "the difficulty of defining limits to legitimate zeal on the public's behalf"). The kind of ad hoc, multifactorial determinations at the heart of this case do not lend themselves to a clear standard. "Transfers between institutions, for example, are made for a variety of reasons and of- ten involve no more than informed predictions as to what would . . . best serve institutional security or the safety and welfare of the inmate." *Meachum,* 427 U.S. at 225. On top of this "[t]here is no consensus regarding the classification, housing, training, and supervision policies and practices that best protect transgender women detainees." *Guzman-Martinez v. Corr. Corp. of Am.*, No. CV 11-02390-PHX-NVW, 2012 WL 2873835, at *8 (D. Ariz. July 13, 2012). That is precisely why "prison administrators . . . , and not the courts" must "make the difficult judgments concerning institutional operations." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Lamb v. Maschner*, 633 F. Supp. 351, 353 (D. Kan. 1986) ("Even though a transfer [to a female prison] may relieve plaintiff's anxieties," it risks "a violation of the women's rights.")

Similarly, all "inmate medical care decisions must be fact-based with respect to the particular inmate, the severity and stage of his condition, the likelihood and imminence of further harm and the efficacy of available treatments." *Roe v. Elyea*, 631 F.3d 843, 859 (7th Cir. 2011); *see also Edmo*, 935 F.3d at 769 ("[N]ot every gender dysphoric person has the same medical needs."). "[M]edical debate"

continues to surround gender dysphoria. *Gibson v. Collier*, 920 F.3d 212, 221 (5th Cir. 2019); *Campbell*, 936 F.3d at 547 n.3 (noting "debate" over surgery).

These factors complicate the "close examination of professional standards and the specific choices made by care providers" necessary to rule on a "deliberate indifference" claim. *Campbell*, 936 F.3d at 548. They also highlight the propriety of deferring to officials with specialized knowledge. *See Thornburgh v. Abbott*, 490 U.S. 401, 407–08; *Hendrix ex el. G.P. v. Evenflo Co. Inc.*, 609 F.3d 1183 (11th Cir. 2010) ("Law lags science; it does not lead it.").

### 4. Qualified Immunity Protects Connors.

#### a. At all relevant times, Connors was simply doing his job, thus satisfying step 1 of the qualified immunity analysis.

"Qualified immunity protects government officials performing discretionary functions as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *See Sharp v. Fisher*, 532 F.3d 1180, 1183 (11th Cir. 2008) (*quoting Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007)). Qualified immunity relieves government officials from the need to "constantly err on the side of caution" by protecting them from liability and the burdens of litigation. *See Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir.2003)(citations omitted). To receive qualified immunity, the officer must first show that he acted within his discretionary authority. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). In determining whether an employee acted

within his discretionary authority, the Eleventh Circuit engages in a "two-fold" inquiry. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)(*quoting McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995)).   At the first step, the court asks "whether the government employee was … performing a legitimate job-related function (that is, pursuing a job-related goal)." *Id.*   "Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen within his legitimate job description." *Id*.   At the second step, the court asks whether the government employee was performing the job-related function "through means that were within his power to utilize." *Id.*

Here, the acts Plaintiff complains about (denying Plaintiff's administrative remedy appeals) were taken by Connors within the scope of his day-to-day job duties as a BOP official, Plaintiff's Second Amended Complaint makes this clear. *Doc. 43*.   *Holloman ex rel. v. Harland*, 370 F.3d 1252, 1265 (11 th Cir. 2004)(explaining that a government employee acts within the scope of discretionary authority when he performs legitimate job-related functions through means that were in his power to use).

### b.   There has been no violation of Plaintiff's Constitutional Rights and Defendants are entitled to qualified immunity.

"Once the Defendants have established that they were acting within their discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Gonzalez*, 325 F.3d at 1234.   To determine whether qualified immunity is appropriate after the court determines that the Defendants were acting within their discretionary authority, the court must consider two different issues. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).   The court looks at: (1) whether the facts, taken in the light most favorable to the Plaintiff, demonstrate that the Defendant official's conduct violated a constitutional right of the Plaintiff, and (2) whether the right allegedly violated was clearly established. *Smith v. Sheriff, Clay County, Fla.*, 2013 WL 425562, at *3 (11th Cir. Feb. 5, 2013)(slip op.)(citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).   Courts may exercise their sound discretion in deciding which of the two issues should be addressed first in light of circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### c.   Plaintiff Fails to Establish That Connors Personally Violated Any Right.

#### (i)   Administrative Grievance Denials Are Not Personal Involvement.

"[E]ach Government official . . . is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).   There must be individual participation

and involvement by the defendant.   Connors, the National Inmate Appeals Administrator, is in this lawsuit because he or his office responded or denied Plaintiff's administrative remedy appeals.   Doc. 43.   This is not enough.   *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.").   This absence of alleged personal participation entitles Connors to qualified immunity. *See Hopper*, 2019 WL 3938076, at \*11 (refusing to "infer personal involvement" when "Defendant Connors . . . is not mentioned in the Complaint except where Plaintiff lists his role as Administrator of National Inmate Appeal and as the person who had the final decision on inmate appeals").

### (ii)   The Constitution Does Not Entitle Plaintiff to Unilaterally Demand the Additional Accommodations She Seeks.

Although Plaintiff received hormone therapy, Plaintiff asserts a constitutional right to gender-affirming surgery.   Doc. 43.    But even if personally attributable to Connors, "no case clearly establishes that denying treatment beyond hormone therapy is unconstitutional." *Campbell*, 936 F.3d at 549.

"[P]risons aren't obligated to provide every requested treatment once medical care begins." *Id*. at 548. Their medical decisions are only "deliberately indifferent" if "no minimally competent professional would have" made them. *Id.* (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)); see also *Arnett*, 658 F.3d 742 at 758 (no constitutional violation where "treatment wasn't so far afield of accepted

22

professional standards as to raise the inference that it was not actually based on medical judgment."). Nothing Plaintiff alleges comes close.

This is because there is no authority establishing the particular rights Plaintiff asserts. Likewise, and regardless of gender identity, inmates have no right to any particular housing classification. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (prison housing assignments are matters delegated to the "full discretion" of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process"). No case requires the categorical assignment of transgender inmates to all-female facilities, an inherently problematic rule from the standpoint of prison administration. And, until after this case was filed, every federal court of appeals to consider the question had found that denying "surgery to a transgender inmate" does not violate the Eighth Amendment. *Gibson*, 920 F.3d at 215–16 (*citing Kosilek*, 774 F.3d at 76–78, 87–88, 96).

In this case, Plaintiff has alleged a serious medical need, namely, gender dysphoria. The Eleventh Circuit has expressly held that gender dysphoria is a serious medical need. *See Kothmann v. Rosario*, 558 Fed. Appx. 907, 911 (11th Cir. 2014)(unpublished)(recognizing GID as a serious medical need).

The subjective component requires the plaintiff to demonstrate that prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294,

298-99 (1991).   Deliberate indifference is the reckless disregard of a substantial risk of serious harm, mere negligence will not suffice.   *Id.* at 835-36.   Consequently, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment.   *See Estelle v. Gamble*, 429 U.S. at 106.   The inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. at 105-106; *Wilson v. Seiter*, 501 U.S. at 298.

The Eleventh Circuit has provided guidance concerning the distinction between "deliberate indifference" and "mere negligence."   For instance, "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir. 1997).   The "deliberate indifference" standard may be met in instances where a prisoner is subjected to repeated examples of delayed, denied, or grossly incompetent or inadequate medical care,; prison personnel fail to respond to a known medical problem, or prison doctors take the easier and less efficacious route in treating an inmate.   *See e.g. Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).   Allegations that raise only claims of mere negligence, neglect, or medical malpractice are insufficient to recover on a section 1983 claim.   *Estelle v. Gamble*, *supra*.   In fact, once an inmate has received medical care, courts are hesitant to find

that an Eighth Amendment violation has occurred.   *Hamm v. DeKalb Cty*, 774 F.2d 1567, 1575 (11th Cir. 1985).   Treatment violates the Eighth Amendment only if it involves "something more than a medical judgment call, an accident, or an inadvertent failure," *Murrell v. Bennett*, 615 F.2d 306, 310 n.4 (5th Cir. 1980).   It must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."   *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

This is clearly a case where the Plaintiff has received medical attention, and the dispute is over the adequacy of that attention.   *Shorter v. United States*, 2018 WL 8918217, at *12-13 (S.D. Fla., 2018).    Under these circumstances, the courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made.   *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991).   Thus, courts that have faced the issue involved in this case (called "gender dysphoria" by psychologists) have consistently held that the Eighth Amendment does not entitle a prison inmate to a particular type of curative treatment [(i.e., estrogen therapy followed by the surgical removal of the genitals and the construction of a vagina-substitute out of penile tissue)], for gender dysphoria.   *See Maggert v. Hanks*, 131 F.3d 670, 672 (7th Cir. 1997).

### d.   Plaintiff Alleges No Violation of Any Clearly Established Right.

Qualified immunity "gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions,'" *Abbasi*, 137 S. Ct. at 1866 (quoting *al-Kidd*, 563 U.S. at 743), by barring individual-capacity lawsuits unless they involve the violation of a right that "was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735 (quoting *Harlow*, 457 U.S. at 818); see also *Hope v. Pelzer*, 536 U.S. 730, 731 (2002) ("[B]efore they are subjected to suit, officers [must be] on notice that their conduct is unlawful."). The housing and medical decisions that Plaintiff challenges were not "deliberate indifference" at all, much less clearly established Eighth Amendment violations. *See Catlin v. City of Wheaton*, 574 F.3d 361, 369 (7th Cir. 2009) ("If there is a legitimate question as to the existence of the right at issue, then qualified immunity attaches."). Nor could Connors have been on notice that signing denials of administrative grievances could expose him to personal liability. See supra pp.16–17; cf. *Abbasi*, 137 S. Ct. at 1868 ("[T]he fact that the [circuit] courts are divided as to whether or not a [42 U.S.C.] § 1985(3) conspiracy can arise from official discussions between or among agents of the same entity demonstrates that the law on the point is not well established."). This holds especially true where the grievances involve medical decisions. *See Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019), docketing petition for cert., No. 18-1504 (U.S. June 3, 2019) ("[N]on-medical officials may reasonably defer to the

judgment of medical professionals regarding inmate treatment."); *Wojtaszek v. Litherland*, No. 3:08-cv-317-JPG, 2010 WL 1325248, *3 (S.D. Ill. Mar. 26, 2010) ("The Seventh Circuit has consistently declined to hold responsible non-medical prison officials who investigate and respond to grievances for deliberate indifference."). So Plaintiff falls short of overcoming qualified immunity.

## **CONCLUSION**

Defendants respectfully request that this court grant its motion to dismiss Plaintiff's Second Amended Complaint.

Respectfully submitted,

Respectfully submitted,

LAWRENCE KEEFE
United States Attorney

*/s/ Herbert S. Lindsey*
Herbert S. Lindsey
Assistant U.S. Attorney
Texas Bar No. 00784476
111 North Adams Street,
Tallahassee, FL   32502
(850) 942-8430
herbert.lindsey@usdoj.gov

## LOCAL RULE 7.1(F) CERTIFICATE

I HEREBY CERTIFY that this memorandum contains 6,202 words, per Microsoft Word's word count, which complies with the word limit requirements set forth in Local Rule 7.1(F).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 28, 2019, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF filing system and that a true copy has been furnished by Electronic Mail to Mrs. Marie A. Mattox, Attorney for Plaintiff.

*/s/ Herbert S. Lindsey*
HERBERT S. LINDSEY
Assistant U.S. Attorney